# In the United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

THOMAS C. GOLDSTEIN,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Maryland
No. 8:25-cr-00006-LKG-1; Hon. Lydia Kay Griggsby

## BRIEF OF APPELLANT THOMAS C. GOLDSTEIN

Thomas C. Goldstein
4323 Hawthorne St., NW
Washington, D.C. 20016
(202) 674-7594
tom@tomgoldstein.net

*Pro Se Defendant-Appellant*

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant Thomas C. Goldstein certifies that no other parties, entities, or attorneys have an interest in the matter who have not already been disclosed to the Court.

/s/ Thomas C. Goldstein

_____

Thomas C. Goldstein

# TABLE OF CONTENTS

## CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ................................................ v

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES........................................................... 2

INTRODUCTION AND SUMMARY OF THE ARGUMENT .............................. 3

STATEMENT OF THE CASE............................................................. 5

    I.    Legal Framework.................................................................. 5

    II.    Relevant Factual Background ............................................ 6

    III.    Relevant Procedural History............................................. 8

ARGUMENT ................................................................................... 11

    I.    The Government's Theory That the Home Is "Tainted" Is Exceptionally Attenuated And Relies on Bald Assertions That Are Contradicted By the Relevant Contracts. ................................................. 12

    II.    The District Court Impermissibly Reversed the Burden of Proof............ 14

    III.    The District Court Impermissibly Relied on an Attenuated "But For" Chain of Causation Reaching Indefinitely into the Future. ............. 16

    IV.    The District Court Erred in Holding That I Failed to Introduce Sufficient "Evidence" to Entitle Me to an Evidentiary Hearing. ............. 20

    V.    There Is No Merit to the Government's Objection to My Proceeding *Pro Se* in This Court. ........................................... 21

CONCLUSION ................................................................................ 25

PRIOR APPEALS.............................................................................. 25

CERTIFICATE OF COMPLIANCE........................................................................26

CERTIFICATE OF SERVICE .............................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Aqua Grp. LLC v. Fed. Ins. Co.*, No. 2:08-CV-11766, 2009 WL 10680638 (E.D. Mich. Mar. 23, 2009) ................................................................18

*In re Moffitt, Zwerling & Kemler, P.C.*, 875 F. Supp. 1152 (E.D. Va. 1995), *aff'd in part, rev'd in part sub nom. United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660 (4th Cir. 1996) ..........................................18

*Luis v. United States*, 578 U.S. 5 (2016)............................................ passim

*United States v. Casperson*, 275 F. Supp.3d 502 (S.D.N.Y. 2017) .........17

*United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017) ...............2, 5

*United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001) ................... passim

*United States v. Harvey*, 814 F.2d 905 (4th Cir. 1987) .............. 3, 14, 15

*United States v. Horak*, 833 F.2d 1235 (7th Cir. 1987)...........................17

*United States v. Ivanchukov*, 405 F. Supp. 2d 708 (E.D. Va. 2005) .......17

*United States v. Jones*, 622 Fed. Appx. 204 (4th Cir. 2015) ...................17

*United States v. Karasarides*, ECF 338, 5:21-cr-00259-DCN (N.D. Ohio Apr. 25, 2024).............................................................................................17

*United States v. Lang*, 527 F.2d 1264 (4th Cir. 1975)............................24

*United States v. Lillard*, 57 F.4th 729 (9th Cir. 2023)...............................5

*United States v. Miranda-Zero*, 836 F.3d 899 (8th Cir. 2016). ..............23

*United States v. Shah*, 84 F.4th 190 (5th Cir. 2023) ...............................17

*United States v. Warshak,* 631 F.3d 266 (6th Cir. 2010)..........................17

*United States v. West*, 877 F.2d 281 (4th Cir. 1989) ...............................24

**Statutes**

21 U.S.C. § 853(a) .......................................................................................5

21 U.S.C. § 853(c) ....................................................................................19

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument.

## JURISDICTIONAL STATEMENT

This is an appeal from an Order and Opinion of the District Court for the District of Maryland. Crim. No. LKG-25-6, ECF Nos. 215 & 237. Under 28 U.S.C. 1291 and the collateral order doctrine, this Court has jurisdiction over an interlocutory appeal of a District Court's Order refusing to permit a criminal defendant to sell property to pay for his defense. *See United States v. Farmer*, 274 F.3d 800, 802 n.1 (4th Cir. 2001) (collecting cases).

## STATEMENT OF THE ISSUES

A criminal defendant has a Sixth Amendment right to dispose of otherwise "forfeitable" property that he needs to fund his criminal defense, so long as that property is "untainted" at the time of the offense. *Luis v. United States*, 578 U.S. 5 (2016); *see also, e.g.*, *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017). This Court has squarely "held that due process requires a pretrial adversary hearing when a defendant claims that a portion of the assets restrained pursuant to criminal forfeiture statutes are untainted and that he has no other funds from which to secure the counsel of his choice." *United States v. Farmer*, 274 F.3d 800, 808 (4th Cir. 2001).

This appeal presents the following question applying those principles:

May a District Court resolve the government's assertion that otherwise-innocent property is "tainted" on a "but for" chain of causation merely by accepting the government's claims as true?

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendant-appellant Thomas Goldstein appeals *pro se* from a District Court Order refusing to allow me to sell my home (the Home) to fund my criminal defense. As a criminal defendant, I have a Sixth Amendment right to use "untainted" assets that are necessary to pay the costs of my defense. *See Luis*, *supra*. The Home itself is not "tainted." Nor did I acquire it (or otherwise pay for it) using funds that are allegedly "tainted." Moreover, the defense submitted sworn affidavits demonstrating that it is necessary for me to sell the Home to fund my reasonable defense costs. The District Court nonetheless refused to allow me to sell the Home, or even to hold an evidentiary hearing to address the government's claim that the Home is a tainted asset. That ruling should be reversed for three independent reasons.

*First*, the District Court held that I have the burden to prove that the Home "is not tainted and subject to forfeiture." ECF 237, at 25-27. That is incorrect. The burden is on the government, which it failed to satisfy by putting on any evidence whatsoever in support of its theory. *See United States v. Harvey*, 814 F.2d 905, 918 (4th Cir. 1987).

*Second*, the District Court deemed the property "tainted" based on the government's bald assertion that there is a chain of "but for" causation under which I would eventually at some point well in the future have lost the Home, were it not for alleged false statements on a loan application. ECF 237, at 12-13, 25-27. That is

insufficient. No court has ever deemed otherwise-innocent property to be tainted on anything remotely resembling the chain of causation identified here. The government's theory also is precluded by the rule that a property must be deemed "tainted" at the time of the alleged offense, not (as the government claims here) at some indeterminate and unknowable date in the future. *See Luis*, *supra*.

*Third*, the District Court refused to hold an evidentiary hearing under *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001). It reasoned that I had not put forward sufficient "evidence" to constitute a *prima facie* showing that would entitle me to a hearing. ECF 237, at 12-13, 25-27. But if I have not made a *prima facie* case, it is hard to see when that standard would ever be satisfied. On its face, the Home is innocent, untainted property. Further, the loan agreements that are relevant to the government's chain of causation in fact flatly contradict its theory. The government's position instead rests on rank speculation.

The District Court's contrary ruling also effectively negates *Farmer*'s holding that a criminal defendant has a due process right to an evidentiary hearing in these circumstances. The District Court seemingly contemplated that the defendant would have to produce substantial additional "evidence" as a prerequisite to securing that hearing. But the *very point* of the hearing is to develop that evidence. The District Court cannot condition a defendant's constitutional right to develop facts on the defendant's first presenting that same evidence.

**STATEMENT OF THE CASE**

## I.  Legal Framework

The Sixth Amendment guarantees a criminal defendant the right to retain counsel of his choice that he can afford. That includes the right to liquidate "untainted" assets to the extent necessary to pay the defense team. *See Luis*, *supra*.

The forfeiture provisions of federal law may in some circumstances limit the assets available to the defendant for that purpose, however. Federal law broadly authorizes the forfeiture of a vast array of assets that are the proceeds of criminal activity. But importantly, only a subset of forfeitable assets — those that are "tainted" at the time of the offense — are subject to pre-trial restraint and in turn are excluded from the defendant's right to dispose of assets to pay counsel. *See ibid*.

The phrase "tainted asset" is a term of art. In the context of forfeiture, it refers to an asset to which the government holds an interest at the time of the offense under 21 U.S.C. § 853(a). *See Luis*, *supra*; *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017); *see also United States v. Lillard*, 57 F.4th 729, 734-35 (9th Cir. 2023). As relevant here, it is property "constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the relevant criminal conduct 21 U.S.C. § 853(a)(1). In the context of false statements on a loan application, the question is thus whether the property – here, the Home – was at the time "derived from" those statements. *Ibid.*

5

## II.     Relevant Factual Background

This appeal involves my attempt to sell my Home to pay the costs of my legal defense. The relevant course of events is as follows, in chronological order:

*First*, my law firm secured a loan from a litigation finance company (Parabellum). This is the "Second" Parabellum agreement, because the parties had a pre-existing relationship. The loan agreement did not require that I use the funds for any particular purpose.

*Second*, using the funds from Parabellum, I purchased the Home. There was no mortgage.[1]

*Third*, my law firm subsequently secured another, separate multi-million-dollar loan from Parabellum. This is the "Third" Parabellum agreement. It was not used to purchase the Home, or otherwise to secure equity in the Home. Instead, I promised to use the funds to pay taxes, *see* ¶ 6(j), and did so.

I gave a personal guarantee as part of the Third agreement, which contains two relevant provisions:

---

[1] Formally, my wife purchased the Home. She later conveyed an equal interest to me. For purposes of this appeal, I accept the District Court's understanding that this detail does not affect the relevant legal issues.

(1)    in the event I took out a loan[2] secured by the Home, I would "cause the proceeds of such … loan to be applied to the repayment of" the Third Agreement (*i.e.*, the loan used to pay taxes), ¶ 6(f)[3]; and

(2)    if I did not secure such a loan within six months, Parabellum would have the right to record a deed of trust in the Home, ¶ 6(h).

*Fourth*, I sold my earlier residence in Chevy Chase, MD. The proceeds of that sale partially paid Parabellum back for the funds borrowed under the Third Agreement.[4]

*Fifth*, I applied for and received a home equity loan secured by the Home from a different lender, NFM Lending. As required by my guarantee with Parabellum, funds from that home equity loan were used to partially repay Parabellum for the funds under the Third Agreement (which had been used to pay taxes), *not* the Second Agreement (which had been used to purchase the Home).[5]

---

[2]    The agreement refers to this financing as a "mortgage." But because I had already purchased the Home, the technically correct term is "home equity loan."

[3]    Under Paragraph 6(f) of the guarantee, the proceeds of any home equity loan for the Home were pledged to "the repayment of the Additional Portfolio Investment Return." The contract defined that as "the Additional Payment" plus fees and interest. Third Agreement ¶ 3(b). In turn, the contract defined "Additional Payment" as the funds received under the Third Agreement. *Id.* ¶ 2(c).

[4]    Under Paragraph 6(e) of the guarantee, the proceeds of the sale of the Chevy Chase residents were similarly pledged to "the repayment of the Additional Portfolio Investment Return."

[5]    Formally, my wife and I submitted the application to NFM Lending together. Again, for purposes of this appeal, I accept the District Court's understanding that this detail does not affect the relevant legal issues.

### III.    Relevant Procedural History

In January 2025, I was indicted on numerous tax charges, as well as charges related to alleged false statements to lenders. The criminal allegations of the Indictment are hotly disputed, to say the least.[6] The Indictment followed a multi-year investigation, through which I have already incurred millions of dollars in legal fees and expenses.

This appeal involves only Count 22 of the Indictment. Based only on that count, the government seeks to forfeit the Home in the event that I am convicted of that specific charge. Count 22 alleges that I made false statements in the home equity application to NFM Lending. It does *not* allege any false statement to Parabellum. Particularly relevant here, the government also asserts that this forfeiture allegation nonetheless authorizes the pre-trial restraint of the Home, such that I may not sell it to pay counsel.

I am precluded from selling the house by a *lis pendens* recorded by the United States and by an appearance bond secured by the house. *See infra* at 11 n.7. The defense moved for leave to sell the house, or at least for an evidentiary hearing under *Farmer*, *supra*, arguing (as relevant here) that both restrictions violate the Sixth

---

[6] Wherever possible, factual statements in this Brief are taken as asserted by the Indictment; they are not factual representations by me individually. The referenced documents are similarly incorporated by the allegations of the Indictment.

Amendment. It included affidavits demonstrating that I required the equity in the Home to pay defense counsel. The details are under seal. ECF No. 166. But the affidavits establish that the reasonable costs of the defense through the trial of this extremely complex tax case are enormous. Further, those costs *radically* outstrip my remaining available resources by much more than my $600,000 equity in the Home.

The District Court denied relief in the Order and Opinion at issue in this appeal. In the District Court, the government offered only two sentences of text and an accompanying footnote in support of its claim that the Home was tainted:

> If Defendant had not obtained the mortgage [from NFM Lending] and repaid [Parabellum], then per their contract, the Funder had the legal right to require Defendant to transfer a deed of trust in the [Home] to the Funder. Therefore, if it were not for Defendant's fraud on NFM, he would have lost his interest in the [Home], which the government seeks to forfeit.

> The evidence at trial, related to the government's forfeiture allegations, will show by a preponderance of evidence that the Funder would have taken Defendant's interest in the [Home] if Defendant had not repaid the Funder with proceeds of the mortgage. For example, the April 26, 2021 contract between the Funder and Defendant required him to "deliver [a] signed deed[] of trust" for the [Home] "in favor of [the Funder] as beneficiary" within three business days of executing the contract. Further, the contract stated that if Defendant did not repay the Funder and had not caused the proceeds of the mortgage to be applied to his outstanding balance within 6 months, then Defendant would "cause, at [Defendant]'s expense . . . the deed of trust on the residence . . . to be recorded." Defendant, however, failed to deliver a deed of trust for the [Home] to the Funder within three days of the contract's execution. The Funder had to repeatedly contact Defendant to request the deed of trust, which Defendant did not provide until August 2021. The Funder's insistence that Defendant deliver the deed of trust referenced in the contract is strong contemporaneous evidence that if

Defendant could not repay the Funder, it could and would have taken his interest in the [Home].

ECF No. 175, at 8 & n.3.

The District Court accepted the government's argument that these assertions were sufficient to deem the Home "tainted," reasoning in three steps. *First*, the Court held that a criminal defendant has the burden of proof. *See* ECF 237, at 12 ("a criminal defendant must show that a portion of the assets restrained pursuant to the criminal forfeiture statutes are untainted" (citation and quotation marks omitted)).

*Second*, the Court held that the government need only *allege* that the defendant would have "lost his ownership interest" in that property "but for" the relevant alleged criminal activity – here, the alleged false statements to NFM Lending. *Id.* at 25-27.

*Third*, the Court held that in order to secure an evidentiary hearing to rebut that allegation, the defendant "must make a *prima facie* showing that the seized assets are not subject to forfeiture, which involves presenting evidence that the assets are untainted or otherwise nonforfeitable." *Id.* at 13.

Applying that legal standard, the District Court summarily held that the government's allegations were sufficient to deem the Home "tainted" and to preclude granting me an evidentiary hearing to show otherwise. It reasoned:

The Government also alleges that the Defendant's false statement on the NFM mortgage loan allowed the Defendant to obtain [the NFM

Lending] loan and to use the loan proceeds to repay an individual [sic] who provided him with funds to purchase the [Home]. ECF *See* [sic] No. 175 at 8. Given that, the Government argues that, but for the Defendant's false statements on the NFM loan application, the Defendant would have lost his ownership interest in the [Home]. *See id.* at 7-8. And so, the Government seeks to forfeit the [Home] in the event of the Defendant's conviction on Count 22. ECF No. 159 at p 122. [] Given the factual allegations in the Superseding Indictment, the Defendant has not shown that the [Home] is not tainted and subject to forfeiture. Given this, the Defendant has no Sixth Amendment right to sell the [Home] to fund his defense.

*Id*. at 26-27 (emphasis added).[7]

This interlocutory appeal as a matter of right followed.

## ARGUMENT

If my Home was "untainted" at the time of the alleged offense, and I need to use it to fund my defense, I have the right to sell it. *Luis*, *supra*. I did not purchase the Home with the proceeds of the alleged misstatements (*i.e.*, the loan from NFM Lending) or otherwise acquire equity in the Home with the proceeds. The District

---

[7] The Home is the subject of a bond securing my pretrial release. The defense separately sought to sell the property by moving under the Bail Reform Act to modify the conditions of my release to substitute more valuable alternative properties. *Compare* ECF No. 166, at 12-17 (Heading II: "The Court should remove the appearance bond on the Hawthorne property." (capitalization omitted) (applying Bail Reform Act factors)) *with id.* at 17-20 (Heading III: "Mr. Goldstein has a Sixth Amendment right to sell the Hawthorne Property to fund his defense." (capitalization omitted) (independently arguing that the appearance bond is independently invalid under the Sixth Amendment)). Applying the Bail Reform Act, the District Court denied that separate request. ECF 237, at 25. The District Court did not hold that if I have the Sixth Amendment right to sell the house, then it nonetheless may still be restrained under the Bail Reform Act.

Court nonetheless deemed the Home to be "tainted" by reasoning in three steps: (1) the burden of proof is on me as the defendant; (2) the government can rely on the mere assertion of a "but for" chain of causation stretching indefinitely into the future; and (3) the defendant can receive an evidentiary hearing to rebut such an assertion only by making a *prima facie* case through sufficient "evidence," which I had failed to do. Particularly given that the government's theory rests on pure speculation that cannot be reconciled with the governing agreements, all three steps are legally erroneous.

## I. The Government's Theory That the Home Is "Tainted" Is Exceptionally Attenuated And Relies on Bald Assertions That Are Contradicted By the Relevant Contracts.

The government's theory is that if I had not secured the loan from NFM Lending, Parabellum would have taken the Home. But nothing in the contracts would have given Parabellum the right, much less the obligation, to foreclose in that circumstance. The Third Agreement with Parabellum *expressly* specifies the consequence of this exact scenario: my failing to get a home equity loan secured by the Home. It merely provides – as the government expressly conceded – that Parabellum would record a deed of trust in the property. ECF No. 175, at 8. There is no reason to believe that Parabellum would have foreclosed in any scenario, given

that its interests were oversecured and that it and the law firm had a longstanding working relationship.[8]

The government's theory of "but for" causation thus depends on three significant factual claims, all of which it baldly asserted, without supplying any evidence at all with respect to *any* of them:

> 1. That neither NFM Lending nor another lender would have given me the home equity line of credit absent the alleged misstatements, notwithstanding that the line was oversecured by the value of the house;
>
> 2. That absent the home equity line, I would not have repaid Parabellum to their satisfaction through some other funds, including the other pending litigation matters in which it has a financial interest; and
>
> 3. That Parabellum would have responded to the default by foreclosing on the Home, notwithstanding the business relationships involved, the possibility of negotiating an alternative, the significant interest income it was receiving, and the other income streams it anticipated from the firm's pending litigation matters.

---

[8] The government represented to the District Court that I "was *required* to obtain a mortgage on the [Home] and to use the proceeds of that mortgage to repay the Funder." ECF No. 175, at 8 (emphasis in original). That is not true. The relevant agreement specified the consequences of two scenarios: "upon" my taking out a loan, I would pay the proceeds to Parabellum; and if I did not take out a loan, Parabellum would record a deed of trust. *See supra* at 7. But even if the agreement were read as the government suggests to require me to take out the loan, it would make no difference. The agreement specifies that the consequence of failing to do so is not foreclosure but instead Parabellum merely recording a deed of trust.

Given that the government's theory is contradicted by the contracts and relies on rank speculation regarding multiple dispositive facts, the District Court's legal errors detailed below require reversal.

## II.    The District Court Impermissibly Reversed the Burden of Proof.

The District Court erred at the outset by holding that I have the burden to prove that the Home "is not tainted and subject to forfeiture." ECF 237, at 25-27. That was error. In *United States v. Harvey*, 814 F.3d 905 (4th Cir. 1987), this Court squarely held that because "[i]t is the government which seeks this extraordinary remedy" of pretrial restraint of the defendant's assets "and which has identified the property it considers forfeitable," "[i]t should therefore bear the burden of proof on the dispositive issues." *Id.* at 928.

The District Court's contrary ruling puts a criminal defendant in an essentially impossible position. The government need only articulate a number of hypothetical "but for" scenarios in which the defendant would have lost the property. It need not have any evidentiary support for those theories at all. Then the defendant would be required to come forward with affirmative proof that the government's pure speculation was incorrect.

The government itself concedes that it bears the ultimate burden of proof "by a preponderance of the evidence." ECF No. 175, at 8 n.3. There is no logical reason why it would bear a lesser burden pre-trial, given that waiting until a judgment of

conviction would nullify the right in question because the government could and would attempt to forfeit the property on an alternative basis. Specifically, it will assert that the Home is "substitute property" that can be forfeited under a more forgiving standard.

In support of its ruling, the District Court cited *Farmer*. But *Farmer* expressly embraces the holding of *Harvey*, which as noted squarely ruled that the government bears the burden of proof. *See* 274 F.3d at 803. To be sure, *Farmer* stated that the defendant bore the burden of proof on the facts of that case. But that holding reflected the case's procedural posture. Prior to the hearing in *Farmer*, "Farmer's assets were seized pursuant to civil forfeiture, based on the same allegedly illegal activities underlying [the] criminal indictment." *Id.* at 804. Thus, there had *already* been "a showing of probable cause" before a judge that the assets were tainted because they had been seized pursuant to a warrant and "Farmer had not challenged the probable cause determination underlying the search warrants used to seize his assets." *Id.* at 801-02. Farmer thus bore the burden of proof because he was seeking "*to rebut the government's showing of probable cause*" that had previously made to the court. *Id.* at 805 (emphasis added).

Here, by contrast, the holding of *Harvey* that the government bears the burden of proof controls. Unlike in *Farmer*, there has been no relevant probable cause determination that the Home is subject to forfeiture. Neither the grand jury nor a

judge found that the Home was a forfeitable tainted asset on the basis of the theory Count 22 relied on by the District Court here. The Indictment contains a general allegation that the Home is forfeitable. But the government has not ever attempted to suggest that the grand jury reached that conclusion on the basis that I would have lost the Home "but for" the alleged misstatements to NFM Lending.

## III. The District Court Impermissibly Relied on an Attenuated "But For" Chain of Causation Reaching Indefinitely into the Future.

The District Court next erred when it deemed the property "tainted" based on the government's bald assertion that there is a chain of "but for" causation under which I would have lost the Home at some indeterminate date in the future, were it not for alleged false statements on a loan application. ECF 237, at 25-27. No court has ever deemed property to be tainted on anything that remotely resembles the government's theory here, which depends on the claims that (1) I could not have secured financing absent the misstatements, (2) I could not have otherwise paid Parabellum to its satisfaction, and (3) Parabellum would otherwise have made the discretionary decision to foreclose. *See* Part I, *supra*.

The cases cited by the government involve much more direct relationships between tainted property and the alleged crime. They all involve the forfeiture of either the direct proceeds of criminality or property purchased with those proceeds. The Home is neither. And none of those cases involve intervening events that

compare to those hypothesized by the government in this case. *See United States v. Shah*, 84 F.4th 190, 252 (5th Cir. 2023) (money generated from health care fraud); *United States v. Jones*, 622 Fed. Appx. 204 (4th Cir. 2015) (property purchased with proceeds of drug crimes); *United States v. Warshak,* 631 F.3d 266, 330–333 (6th Cir. 2010) (proceeds of business permeated by fraud); *United States v. Horak*, 833 F.2d 1235, 1242–43 (7th Cir. 1987) (proceeds of a job that depended on illegal racketeering activity); *United States v. Karasarides*, ECF 338 at 2-3, 5:21-cr-00259-DCN (N.D. Ohio Apr. 25, 2024) (mortgage paid with proceeds of illegal activity); *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 712 (E.D. Va. 2005) (proceeds of illegal activity).

Below, the government relied heavily on the district court's brief opinion in *United States v. Casperson*, 275 F. Supp.3d 502, 503 (S.D.N.Y. 2017). There, the defendant took out a mortgage and also "home equity lines of credit" secured by a residence. Each time the defendant drew on those lines, it reduced his equity in the residence. The defendant then paid back both a mortgage and the lines with tainted funds. The court held that the residence was tainted to the extent of those payments. *Casperson* is thus a case in which the defendant acquired an interest in the property through the use of tainted funds. The District Court in this case did not rely on *Casperson*, which does not involve a "foreclosure" theory of causation. Moreover, *Casperson* is easily distinguishable. When I transferred the funds from NFM

Lending to Parabellum, there was no effect on my equity in the Home. Indeed, the NFM Lending funds specifically were applied to the loan under the Third Agreement with Parabellum, which had not been used to purchase the Home. *See supra* at 7.

The District Court's finding that innocent property can be deemed tainted at some indefinite point in the future, despite the existence of numerous intervening and confounding factors, is a recurring danger in the application of "but for" causation. *E.g.*, *In re Moffitt, Zwerling & Kemler, P.C.*, 875 F. Supp. 1152, 1160 (E.D. Va. 1995), *aff'd in part, rev'd in part sub nom. United States v. Moffitt, Zwerling & Kemler, P.C.*, 83 F.3d 660 (4th Cir. 1996) ("Analogously, in the context of tort law, courts long ago recognized that factual or 'but for' causation, taken to its logical extreme, extends legal liability too far, for '[i]n a philosophical sense, the consequences of an act go forward to eternity.' Keeton, et al., *Prosser & Keeton on the Law of Torts* 264 (5th ed. 1984)."); *Aqua Grp. LLC v. Fed. Ins. Co.*, No. 2:08-CV-11766, 2009 WL 10680638, at *10 (E.D. Mich. Mar. 23, 2009) ("As many a bewildered first-year law student has learned while studying torts, every action is the but-for cause of a nearly infinite number of chains of events, each branching and stretching out limitlessly into the future.").

There is a further distinction between the cases cited by the government and this one that is reflected in the legal standard, and which imposes a critical limitation

on "but for" causation stretching infinitely into the future. The Supreme Court held in *Luis* that otherwise-innocent property is subject to pretrial restraint only if it is "tainted" at the time of the offense giving rise to the forfeiture. 578 U.S. at 1091-92. That follows from the fact that the government's pre-trial interest in the property attaches from the forfeiture statute's "relation back" provision. 21 U.S.C. § 853(c). In the cases cited by the government, this requirement was satisfied because the property was either itself the proceeds of the alleged crime or directly acquired with those proceeds. And in each of those cases, all the relevant events giving rise to but for causation had in fact occurred.

The government's theory here is very different. It is not only far more hypothetical and attenuated, it depends on hypothetical events occurring *after* the alleged offense. It asserts that absent the false statements to NFM Lending I would have lost my interest in the Home at some unknowable point indefinitely in the future when Parabellum would have decided to foreclose. Manifestly, on that theory, the government's interest in the Home did not arise at the time I applied to NFM or received the funds. Those future events are moreover counterfactual hypotheticals about what might have occurred, which has never been true in cases finding that offenses were sufficient "but for" causes of the defendant acquiring property.

**IV.    The District Court Erred in Holding That I Failed to Introduce Sufficient "Evidence" to Entitle Me to an Evidentiary Hearing.**

The District Court finally erred by refusing to hold the evidentiary hearing required by *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001), on the ground that I had not put forward sufficient "evidence" to constitute a *prima facie* showing that would entitle me to a hearing. ECF 237, at 25-27.

On any reasonable understanding, I made out a *prima facie* case. Indeed, the District Court did not explain its contrary view. On its face, the Home is untainted, innocent property. Further, the relevant contractual provisions do not give Parabellum the right to foreclose in the event I failed to secure the financing from NFM Lending. The government does not contend otherwise. If that does not make out a *prima facie* showing that the property is not tainted, it is hard to imagine what would. The fact that the government announces an attenuated "but for" theory of causation, supported by no evidence whatsoever, cannot negate that *prima facie* demonstration.

Nor was there further "evidence" that I could reasonably have been expected to produce. The relevant documents speak for themselves. It is not necessary to put forward witness testimony to establish that the failure to secure financing from NFM Lending merely would have resulted in Parabellum recording a deed of trust.

In any event, as a legal matter, the District Court's holding puts the cart before the horse. The Court ruled that because I had not come forward with sufficient "evidence," I was not entitled to the "evidentiary hearing" at which I could develop the facts to prove I was correct. That ruling effectively negates the due process right to an evidentiary hearing recognized by *Farmer*. The very purpose of the *Farmer* hearing is to develop a record that will be the basis of the Court's determination whether property is tainted. It is in that hearing, for example, that a representative of Parabellum might testify regarding whether it would have foreclosed on the property. The Court could not reasonably hold that I was disentitled to an evidentiary hearing on the ground that I failed to submit the evidence that would be developed at that hearing.

## V. There Is No Merit to the Government's Objection to My Proceeding *Pro Se* in This Court.

The Court will note that I have filed this appeal *pro se*, while still represented by counsel in the District Court. I have no other choice. Following the ordinary practice, I retained my counsel for proceedings in the District Court. For the reasons given in this Brief and that are the subject of this appeal, I have not yet paid them a large portion of their fee for that work. I do not have the funds to pay them (or other counsel) to litigate this appeal.

The government has nonetheless taken the position that I am forbidden from appealing *pro se*, unless I terminate my counsel's representation in the District Court and represent myself *pro se* in that Court as well. That is a remarkable and untenable claim. It amounts to the assertion that I must sacrifice my Sixth Amendment right to counsel in whole or in part, no matter what. On the one hand, the government says that to appeal to this Court I must also proceed to trial *pro se* in the District Court. On the other hand, if I do not appeal to this Court, I must abandon my right to sell my assets to fund my defense.

The government presumably is relying on the fact that the District Court has denied my request to present oral argument in that Court on two pre-trial motions, declining to exercise its discretion to permit me to engage in "hybrid representation" to that extent. ECF Nos. 188, 191. The District Court reasoned that hybrid representation is forbidden absent a "special need," which was lacking in those circumstances, given that (a) my District Court counsel had signed and filed the motions, (b) counsel was capable of arguing them, and (c) I had no relevant specialized skill set or knowledge. *Ibid.*

My submitting a *pro se* Motion and Brief in this Court obviously does not violate the District Court's Order, which only governs proceedings in that forum. The District Court could not and would not dictate who can file papers in this Court.

*Pro se* filings here are instead governed by this Court's Rules, with which I have complied, including Local Rule 34(b).

My proceeding *pro se* simply does not constitute "hybrid representation," which is a term of art that refers to a criminal defendant who is represented by counsel in the court in question. The issue does arise when a criminal defendant who is represented by counsel on appeal seeks to file a *pro se* supplemental brief. That is presumptively forbidden, out of a concern that it will be deeply inefficient for the court of appeals and create inconsistencies in the defendant's appellate submissions. *E.g.*, *United States v. Miranda-Zero*, 836 F.3d 899, 901 (8th Cir. 2016). So far as can be determined, no decision of this Court (or any court of appeals) has ever suggested that concerns regarding hybrid representation could arise when the defendant is instead represented in a *different* court. Put another way, my defense attorneys are not my "counsel" in the relevant respect, because they are not participating here. There is thus no "hybrid" representation.

There is some ancillary concern that hybrid representation could reflect a conflict between the defendant and defense counsel, potentially creating grounds for the defendant to claim that he received constitutionally ineffective representation. The District Court briefly alluded to that concern in declining to permit me to present oral argument below. ECF No. 191, at 14. But there is no such issue here. Defense

counsel and I are entirely aligned; indeed, they litigated this issue on my behalf below. Their retention agreement simply does not include appellate proceedings.

But in any event, if this Court regards my *pro se* filing to constitute "hybrid representation," it should permit it. The factors that principally drove the District Court's ruling are very different here. There obviously is a "special need."[9] If I do not proceed *pro se*, I must abandon this appeal as a practical matter. The only alternative (according to the government) would be to go to trial in this extremely complex tax case without representation. Put another way, I am not making the *choice* to proceed *pro se* in this Court; I have no other practical option. Further, my District Court counsel did not file and sign the relevant papers, I did.[10]

Finally, I do have a relevant special skill set. I spent my entire career as an appellate advocate, including in proceedings before this Court. Indeed, the

---

[9] The District Court understood there to be a categorical principle that a defendant must show a "special need" to participate in the manner requested. ECF No. 191, at 10. That is not correct. As discussed, this Court has held that the determination whether to permit hybrid representation is within the District Court's broad discretion to manage the proceedings before it. The defendant instead must show a "special need" to establish on appeal that the District Court *abused its discretion*. *See United States v. West*, 877 F.2d 281, 288, 293 (4th Cir. 1989); *United States v. Lang*, 527 F.2d 1264, 1265 (4th Cir. 1975). But the issue is academic, because there obviously is a special need in these circumstances.

[10] My District Court counsel did file the Notice of Appeal in the District Court. But that says nothing about my representation in this Court. I am *not permitted* to file documents *pro se* in the District Court, because I am represented there. If I was allowed to submit the Notice of Appeal, I would have.

government's argument in opposing my arguing in the District Court was that "the experience that [I] have overwhelmingly falls in appellate advocacy." ECF No. 158, at 7.

## CONCLUSION

The District Court should be reversed. I should be permitted to sell the Home on the ground that the government neither satisfied its burden of proof nor articulated a legally valid theory under which the Home was "tainted" at the time of the offense. Alternatively, the Court should be directed to hold the evidentiary hearing required by *Farmer*.

## PRIOR APPEALS

I have not filed prior *pro se* appeals in this Court.

Dated: November 26, 2025

Respectfully submitted,

/s/ Thomas C. Goldstein
Thomas C. Goldstein
4323 Hawthorne St., NW
Washington, D.C. 20016
(202) 674-7594
tom@tomgoldstein.net
*Pro Se Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6093 words. This brief complies with the type-style requirements set forth in Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Thomas C. Goldstein

**CERTIFICATE OF SERVICE**

I certify that on November 26, 2025, I served a complete copy of the foregoing

Brief on counsel for the United States by electronic mail to:

Sean Beaty
United States Department of Justice
Tax Division
150 M St., NE
Washington, DC 20002
sean.p.beaty@usdoj.gov


/s/ Thomas C. Goldstein