No. 25-4638

# In the United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

THOMAS C. GOLDSTEIN,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Maryland
No. 8:25-cr-00006-LKG-1; Hon. Lydia Kay Griggsby

**REPLY IN SUPPORT OF
DEFENDANT-APPELLANT'S EMERGENCY MOTION FOR
SUMMARY REVERSAL OR IN THE ALTERNATIVE FOR
EXPEDITED BRIEFING AND DECISION**

Thomas C. Goldstein
4323 Hawthorne St., NW
Washington, D.C. 20016
(202) 674-7594
tom@tomgoldstein.net

*Pro Se Defendant-Appellant*

# REPLY IN SUPPORT OF
# DEFENDANT-APPELLANT'S EMERGENCY MOTION FOR SUMMARY REVERSAL OR IN THE ALTERNATIVE FOR EXPEDITED BRIEFING AND DECISION

Defendant-Appellant respectfully submits this Reply Brief.

## I. This Court Should Expedite the Appeal.

This Court should decide this appeal on an expedited basis, based on the briefing here and in the District Court. The government's only argument is that there is no "emergency" because it claims I am inevitably going to lose. Opposition (Opp.) 2. It then devotes most of its 27 pages to arguing the merits. There is no reason to think that the Court will benefit from still more filings.

The urgent circumstances cannot be disputed, so the government does not try. The trial begins in less than six weeks, a period containing substantial holidays. Any proceedings on remand would take more time. Following that, I would need to sell the Home.

The government's foot dragging jeopardizes the prosecution. As discussed in my Opening Brief, if the courts recognize my right to sell my Home only when it is too late to do so as a practical matter, then any judgment of conviction will be *per se* invalid. There will moreover be a substantial argument that because I have already expended almost all of

my assets in a first trial, I cannot be retried, because I cannot be returned to the circumstances that existed prior to the Sixth Amendment violation.

## II. My Pro Se Filings Are Proper.

My Opening Brief anticipated the government's objection to my proceeding *pro se*. The government does not dispute that my submissions comply with not just the Court's Rules but all existing precedent. Despite a few references to "hybrid representation," the government does not actually argue that I am trying to proceed on that basis; hybrid representation uniformly involves submissions by both the defendant and his counsel in the same court. *See* Opening Br. (Open. Br.) 23. If there is an analogy to hybrid representation, then the urgent circumstances and the fact that I cannot afford counsel constitute a "special need."

The government nonetheless asserts that my briefing this appeal could "muddy" the record. Opp. 7, 11-12. But how? The government never explains. And it has had every opportunity: my Motion and Brief are both on file.[1]

---

[1] There is no tension between Munger Tolles' recognition in the District Court that the firm must remain in the case and my explanation that the defense team needs to know that it will be paid. As discussed *infra*, the *outside experts* require assurance they will be paid.

2

Importantly, *United States v.* Farmer, 274 F.3d 800, 802 n.1 (4th Cir. 2001), necessarily rejects the government's argument that there is a substantial overlap between the issues litigated by me in this appeal and those litigated by counsel in the trial. *Farmer* holds that there is appellate jurisdiction here under the aptly-named "collateral order doctrine," which *requires* a showing that the appellate issue is "completely separate from the merits," *United States v. Michelle's Lounge*, 39 F.3d 684, 693 (7th Cir. 1994), *cited approvingly in Farmer*. *See also, e.g.*, *In re Newport Sav. & Loan Ass'n*, 928 F.2d 472, 475 (1st Cir. 1991).

The government finally asserts that this Court should appoint CJA counsel. Opp. 11. But that ignores this Court's Rules, which (1) call for CJA appointments only where necessary to aid the Court (as with the non-attorney defendant in *Farmer*), and (2) call for CJA counsel to file additional briefs, not for striking *pro se* submissions. *See* 4th Cir. Local R. 34(b), 46(d). In any event, the government does not suggest that further briefing would do anything other than waste both critical time and the severely limited pool of CJA funds. With all due respect to the CJA appellate attorneys who could attempt to immerse themselves in

3

these questions on an emergency basis, their briefing is unlikely to significantly improve on mine.[2]

### III. The Government's Response to the Substance of My Appeal Lacks Merit.

The government has no substantial answer with respect to any of the three separate legal errors committed by the District Court.

#### A. The District Court improperly put the ultimate burden of proof on me.

The government repeatedly echoes the District Court's view that I have the burden to prove that the Home is not tainted and therefore is not excluded from the assets that I may use to pay counsel. Opp. 19, 27. But it does not dispute that this Court squarely held the opposite in *Harvey*. The government just asserts without any explanation that *Harvey*'s holding is no longer good law because it "was decided before *Caplin & Drysdale*." *Id.* at 24. But *Caplin & Drysdale v. United States*, 491 U.S. 617, 630 (1989), said nothing about this issue. To the contrary, as *Farmer* explains, 803 F.3d at 803, the Supreme Court reserved any

---

[2] More realistically, if directed by the Court, I could and would request that another member of the Bar appear on my behalf *pro bono* as a courtesy to adopt my Motion and Brief. But what would be the point of that, particularly when there is an undisputed urgent need to resolve this appeal quickly?

4

decision about this type of pre-judgment proceeding in the companion case to *Caplin & Drysdale*.

### B. The District Court allowed the government to proceed on an impermissibly attenuated and unsupported theory that the Home is "tainted."

My Opening Brief explained – and the government does not even *dispute* – that the theory that the Home is "tainted" is highly attenuated and depends on three separate factual premises for which there is no evidence whatsoever: (1) that I would have been denied the NFM Lending loan without the alleged misstatements; (2) that I would not have satisfied the Funder in some other way; and (3) that the Funder would have used its discretion to foreclose on the property. So, even if other courts would accept such a theory if it was supported by evidence, they plainly would reject it as mere assertion.

The government asserts that "[c]ourts agree that 'proceeds' in the criminal forfeiture context is property a defendant would not *have had* 'but for' the criminal conduct," Opp. 22, but the case law it cites applies a substantially more rigorous test: "whether the defendant would *have received* the property 'but for' his criminal conduct." *United States v. Shah*, 84 F.4th 190, 252 (5th Cir. 2023). And here, it is undisputed that I

5

received the Home prior to, and independent of, receiving the NFM Lending financing.

The government does not dispute that this more demanding legal standard is dispositive. As explained in my Opening Brief (at 19), the Supreme Court held in *Luis v. United States*, 578 U.S. 5 (2016), that property is "tainted" *only* if it had that status at the time of the relevant alleged criminal offense. But here, the government's theory violates that rule: It maintains that I would have lost the Home at some unknown and unknowable date in the future.

### C.  The District Court impermissibly required me to produce "evidence" to secure an evidentiary hearing.

The government does not even respond directly to the third and final reason for this Court to reverse: The District Court erroneously held that I must put forward "evidence" in order to secure an evidentiary hearing. *See* Open. Br. 20-21. The government instead contends that the District Court evaluated an evidentiary record, attempting to suggest that no further hearing was necessary. But in doing so, it very seriously misrepresents the ruling below as if the District Court "*held* that the [Home] is a tainted asset." Opp. 21 (emphasis added); *see also id.* at 8, 26. In support, the government quotes the District Court's statement – as if

6

it were a finding – that "[i]f Goldstein had failed to pay off the Funder, he 'would have lost his ownership interest in the [Home].'" *Id.* at 22-23 (quoting ECF No. 191, at 27). But in reality, it is quoting the District Court's recitation of the *government's allegation*, without so much as an ellipsis; the government is just tautologically citing itself. Here is what the Court actually said. "Given this, *the Government argues that*, but for the Defendant's false statements on the NFM loan application, the Defendant would have lost his ownership interest in the [Home]." ECF No. 191, at 27.

## IV. There Is No Basis for the Government's Proposed Alternative Grounds to Affirm.

### A. The Government Grossly Misstates the District Court's Holding Two More Times.

The government argues that this Court can affirm based on two supposed rulings by the District Court that are in fact completely made up and that moreover relate to issues the government did not even raise. First, the government asserts that the District Court supposedly "concluded" that I "did not meet '[my] burden to show that [I have] no other assets to pay for [my] counsel" (Br. 20 (quoting ECF No. 191, at 26); *see also* Opp. at 21, 25-26). That is a fabrication. The District Court did

7

not decide the question whether I have the assets to pay counsel, *see id.* at 25-27, nor did the government ask it to, nor could it have done so without holding an evidentiary hearing given that I had submitted a sworn affidavit detailing how the costs of counsel radically outstrip my assets.

Second, the government asserts that the District Court held that my Sixth Amendment claim failed for the independent reason that the Home is restrained by an appearance bond. Opp. 8, 19. That is not true either. If the government were correct, the opinion below would state that my Sixth Amendment right to sell the Home is irrelevant because of the appearance bond. But it says nothing of the sort. And that is no surprise, given that (1) the government did not make this argument, and (2) there is no serious argument that proceedings under the Bail Reform Act are somehow exempt from the Sixth Amendment.

The government rests its claim on the fact that in one sentence the Court says that it is ruling for "two reasons." ECF No. 197, at 25. But as explained in my Opening Brief (at 11 n.7), that is because the District Court separately rejected two distinct arguments. The Court's reference to "two reasons" merely reflects the fact that both arguments appeared

8

*in the same defense motion*, which was denominated generally as a request to permit me to sell the Home. ECF No. 166. The sentences immediately preceding the bare two words the government quotes explain that this Section of the District Court's opinion provides its "two reasons" that together are the basis denying the *entire motion*, including both of those distinct arguments.

> **B.  The Fact that Munger Tolles Remains My District Court Counsel Does Not Negate My Sixth Amendment Right to Use My Assets to Fund My Defense.**

The government has also waived the argument – which it makes at great length for the first time in this Court – that my Sixth Amendment right to sell assets to fund the defense is irrelevant because my defense attorneys have not sought to quit, Opp. 1, 7-8, 13-16, because "the firm would not be allowed to withdraw" for non-payment, *id.* at 15-16 (collecting cases).

The government's position is not the law. Courts have repeatedly held that the right to sell assets to pay counsel applies with respect to an attorney who already represents the defendant. See, *e.g.*, *United States v. Hernandez-Gonzalez*, 2017 WL 2954676 (S.D. Fla. June 26, 2017); *United States v. $89,866.18*, 2021 WL 1560813 (N.D. Ind. Apr. 21, 2021);

9

*United States v. Marshall*, 2016 WL 11431642 (N.D. W. Va. June 17, 2016) (report and recommendation). At the very least, the relevant question is whether existing counsel has been paid enough to permit a thorough defense. *E.g.*, *United States v. Patel*, 2018 WL 6579989 (W.D. Va. Dec. 13, 2018). That certainly has not occurred here.

In any event, the government's argument fails for two factual reasons. First, the government fails to acknowledge that I am represented by multiple additional attorneys outside the Munger Tolles firm. But those attorneys refuse to appear in the District Court and to participate in trial preparation specifically because I cannot pay them.

Second, the issue is not limited to attorney's fees: "The defense team, and *in particular the experts retained by the defense*, require assurance that they will be paid prior to the close of trial in order to participate. Given all the other expenses related to the case, selling the home is necessary to pay *them*." Motion 2 (emphases added). The government asserts – citing nothing – that the Sixth Amendment right is limited to hiring attorneys, not to paying expenses such as experts. But the relevant right is to fund my defense, not just to pay attorneys. Sometimes courts use the shorthand of paying "counsel," which merely

10

reflects that it is counsel who pays the relevant expenses including experts.

The government's contrary position is also radical and dangerous, because its essential premise is that the Sixth Amendment does not encompass a right to hire experts that are necessary to the defense. But the Supreme Court has already held the opposite. *Ake v. Oklahoma*, 470 U.S. 68 (1985) (Sixth Amendment may include right to retain psychiatric expert). Accepting the government's position would also destroy effective CJA representation in many complex cases, because there would no longer be a right to the assistance of non-attorney professional staff such as investigators and experts. But courts squarely hold the opposite. *E.g.*, *United States v. Evanovich*, 2025 WL 3208308 (E.D. Cal. Nov. 17, 2025); *United States v. King*, 2025 WL 2939390 (D.N.M. Oct. 16, 2025). It would also mean that criminal defense counsel's failure to hire an expert would never constitute constitutionally ineffective assistance. But courts reject that argument, too. *E.g.*, *Dugas v. Coplan*, 428 F.3d 317 (1st Cir. 2005); *Babick v. Berguis*, 2008 WL 282166 (W.D. Mich. Jan. 29, 2008).

11

### D. The Government Concedes that the Appearance Bond Blocks Me from Selling My Home.

The Sixth Amendment right at stake here is my right to sell untainted assets to fund my defense. The government attempts to suggest that right is not implicated here because it "has neither seized the Property nor sought a restraining order to prevent its sale." Opp. 5, 17. But that is not a serious claim. There is no dispute that I am not currently allowed to sell my Home. Otherwise, what is the government fighting me about? If I tried to sell the Home, the government would seek to have me jailed in an instant.

Most obviously, I cannot sell the Home because of the appearance bond. The government effectively concedes that. Opp. 17. It simply pivots to the false claim that the District Court independently held that the Sixth Amendment doesn't apply to bail conditions. *See supra.* But there is no actual dispute about the relevant point here: The bond blocks me from selling the Home.

That leaves the government's argument that the *lis pendens* it has placed on the Home does not implicate the Sixth Amendment. That simply does not matter, given the bond. But in any event, the government

12

is wrong for the reasons given at length in the defense's District Court briefing. *See* ECF No. 166, at 6-11; ECF No. 179, at 8-10.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Motion and my Opening Brief, the Court should grant the Motion for summary reversal or expedited briefing and decision.

Dated: December 4, 2025                    Respectfully submitted,

/s/ Thomas C. Goldstein

Thomas C. Goldstein
4323 Hawthorne St., NW
Washington, D.C. 20016
(202) 674-7594
tom@tomgoldstein.net

*Pro Se Defendant-Appellant*

13

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limits of Fed. R. App. P. 27(d)(2) because it contains 2,551 words, excluding the portions exempted by the rules. The motion's typesize and typeface comply with Fed. R. App. P. 32(a)(5) and (6) because it was prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14-point font.

Dated: December 5, 2025

*/s/ Thomas C. Goldstein*
Thomas C. Goldstein

## CERTIFICATE OF SERVICE

I certify that on December 4, 2025, I served the foregoing motion on counsel for the United States by CM/ECF. Counsel for the government are all registered ECF users and will be served by the ECF system.

Dated: December 5, 2025

*/s/ Thomas C. Goldstein*
Thomas C. Goldstein

15